1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

SHERYL R. GALLOWAY-SIMMONS,                 NO.  C14-246-JCC-JPD

9
                            Plaintiff,

10
         v.                                                          REPORT AND
                                                            RECOMMENDATION
11
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12
                            Defendant.

13

14          Plaintiff Sheryl R. Galloway-Simmons appeals the final decision of the Commissioner

15  of the Social Security Administration ("Commissioner") which denied her application for

16  Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §

17  401-33, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth

18  below, the Court recommends that the Commissioner's decision affirmed.

19                          I.          FACTS AND PROCEDURAL HISTORY

20          At the time of plaintiff's alleged disability onset date, plaintiff was a 52 year old

21  woman with a high school education and some college.  Administrative Record ("AR") at 40,

22  156.  Her past work experience includes employment as a document manager, senior document

23  scanner, and retail sales associate.  AR at 40-42.  Plaintiff was last employed in July 2012 on

24  the sales floor at Sears.  AR at 41-42.

REPORT AND RECOMMENDATION - 1

1    On March 9, 2011, plaintiff filed an application for DIB, alleging an onset date of June

2    30, 2010.  AR at 156-62.  Plaintiff asserts that she is disabled due to right knee arthritis, right

3    ankle pain, and lower back pain.  AR at 201.

4    The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 87-

5    89, 93-97.  Plaintiff requested a hearing which took place on August 3, 2012.  AR at 37-62.

6    On October 15, 2012, the ALJ issued a decision finding plaintiff not disabled and denied

7    benefits based on a finding that plaintiff could perform her past relevant work as a document

8    scanner.  AR at 16-36.  Plaintiff's administrative appeal of the ALJ's decision was denied by

9    the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the

10   Commissioner as that term is defined by 42 U.S.C. § 405(g).  On February 19, 2014, plaintiff

11   timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

12                    II.        JURISDICTION

13   Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §

14   405(g).

15                    III.       STANDARD OF REVIEW

16   Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

17   social security benefits when the ALJ's findings are based on legal error or not supported by

18   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

19   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

20   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

21   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

22   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

23   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

24   53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

REPORT AND RECOMMENDATION - 2

whole, it may neither reweigh the evidence nor substitute its judgment for that of the

Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed

and further administrative proceedings would serve no useful purpose." *McCartey v.*

*Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

(9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
> claimant's evidence; (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Galloway-Simmons bears the burden of proving that she is

disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d

1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the

"inability to engage in any substantial gainful activity" due to a physical or mental impairment

which has lasted, or is expected to last, for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if her impairments are of

such severity that she is unable to do her previous work, and cannot, considering her age,

education, and work experience, engage in any other substantial gainful activity existing in the

national economy. 42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. § 404.1520(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. § 404.1520(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. § 404.1520(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

shifts to the Commissioner at step five to show that the claimant can perform other work that

exists in significant numbers in the national economy, taking into consideration the claimant's

RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g); *Tackett*, 180 F.3d at

1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the

claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On October 15, 2012, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2.    The claimant has not engaged in substantial gainful activity since June 30, 2010, the alleged onset date.

3.    The claimant has the following severe impairments: degenerative disk disease of the spine, osteoarthrosis of the knees, right ankle strain and obesity.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).  The claimant can frequently lift and/or carry ten pounds.  The claimant can occasionally lift and/or carry twenty pounds.  The claimant can stand and/or walk four hours out of an eight-hour workday.  The claimant can sit six hours out of an eight-hour workday.  The claimant can occasionally climb ramps/stairs, stoop, kneel, crouch and crawl.  The claimant can never climb ladders, ropes or scaffolds.  The claimant can frequently balance.  The claimant must avoid concentrated exposure to the extreme cold and vibration.

6.    The claimant is capable of performing past relevant work as a senior scanner.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.    The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2012, through the date of this decision.

AR at 21-30.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## VI.    ISSUES ON APPEAL

As identified in plaintiff's Opening Brief, the principal issues on appeal are:

1.    Whether the ALJ provided clear and convincing reasons to find Ms. Galloway-Simmons not credible;

2.    Whether the ALJ provided specific and legitimate reasons to reject treating physician, Lisa Oswald, M.D.'s, opinion that plaintiff cannot sustain full time work;

3.    Whether the Commission properly determined Ms. Galloway-Simmons can return to past relevant work as a document scanner/preparer; and

4.    Whether the ALJ's errors support remand for an immediate award of benefits.

Dkt. No. 12 at 1.

## VII.    DISCUSSION

A.    The ALJ's Assessment of the Medical Evidence

Plaintiff raises issue with the ALJ's assessment of the medical evidence.  Dkt. at 12 at 10-18.  Specifically, plaintiff argues that the ALJ erred by rejecting the medical opinion of plaintiff's long-time treating physician Lisa Oswald, M.D., who opined plaintiff is capable of working no more than part-time.  AR at 499 (opining in 2011 that plaintiff is unable to work more than five hours per day, four days per week due to "moderate arthritis in both knees, chronic low back pain, and cervical stenosis with laminectomy"); *see also* AR at 391 (opining in 2009 plaintiff should work no more than five hours per day due to neck and back impairment), 506 (opining in 2011 plaintiff could work a maximum of five hours per day), 525 (noting in 2010 plaintiff had not progressed beyond working five hour days), 528 (opining in 2012 plaintiff could sit for three hours and stand/walk for one hour in an eight-hour work day), 544 (opining in 2012 plaintiff "would do well working perhaps part[-]time with a mainly sedentary job as long as she is exercising at other times.").  Instead of crediting the opinion of Dr. Oswald, the ALJ gave great weight to the medical opinions of various examining and non-

examining physicians who opined plaintiff is capable of a range of light work activities.  AR at 28-30.

The ALJ rejected Dr. Oswald's opinion because: (1) she "did not submit any supporting evidence to show [plaintiff] could not work more than" part-time; (2) her opinion is based on diagnosis and plaintiff's subjective complaints; (3) her findings are not supported by the evidence, including plaintiff's reports that her condition improved, plaintiff's daily activities, and plaintiff's relatively mild findings on right knee imaging; and (4) because her findings are inconsistent with the opinion of examining physician James K, Symonds, M.D., and inconsistent with Dr. Oswald's own opinion that plaintiff "needs to work." AR at 29.  These are specific and legitimate reasons supported by substantial evidence sufficient to reject the opinion of a treating physician.  *See Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004) (rejecting treating physician opinion that was unsupported by objective evidence, contradicted by other statements and assessments of plaintiff's medical condition, and based on plaintiff's subjective descriptions of pain) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)(rejecting treating source opinion that was "unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence" of plaintiff's alleged symptoms).

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

1   physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

2   contradicted by other evidence and specific and legitimate reasons if it is. *Reddick v. Chater*,

3   157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough

4   summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

5   making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than

6   merely state his conclusions. "He must set forth his own interpretations and explain why they,

7   rather than the doctor's, are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

8   Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*,

9   157 F.3d at 725.

10          The opinions of examining physicians are to be given more weight than non-examining

11   physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the

12   uncontradicted opinions of examining physicians may not be rejected without clear and

13   convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

14   physician only by providing specific and legitimate reasons that are supported by the record.

15   *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

16          Opinions from non-examining medical sources are to be given less weight than treating

17   or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the

18   opinions from such sources and may not simply ignore them. In other words, an ALJ must

19   evaluate the opinion of a non-examining source and explain the weight given to it. Social

20   Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives

21   more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

22   non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

23   consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947,

24   957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

1    Turning to the substance of the ALJ's decision, the first two reasons offered by the ALJ

2    to reject Dr. Oswald's opinion, that Dr. Oswald "did not submit any supporting evidence to

3    show [plaintiff] could not work more than" part-time and, as such, Dr. Oswald's opinion was

4    based on diagnosis and plaintiff's subjective complaints, are specific and legitimate reasons

5    supported by substantial evidence in the record.  *See Reddick*, 157 F.3d at 725.  An ALJ need

6    not accept the opinion of a treating physician if that opinion is brief, conclusory and

7    inadequately supported by clinical findings or by the record as a whole.  *Batson,* 359 F.3d at

8    1195 (9th Cir. 2004) (citing *Tonapetyan*, 242 F.3d at 1149).

9    As defendant points out, Dr. Oswald provided little to no objective support or

10   explanation for her opinion that plaintiff was limited to less than full time work.  *See* AR at

11   499, 527.  For example, Dr. Oswald's 2012 functional capacity assessment of plaintiff

12   indicates she based her opinion on x-ray imaging, which confirmed plaintiff's diagnosis of

13   osteoarthritis of the knees, as well as plaintiff's complaints of pain on examination.  AR at 506,

14   52730.  However, as the ALJ points out, the results of the x-ray imaging relied on by Dr.

15   Oswald were relatively mild.  AR at 29 (citing AR at 493 (x-ray imaging of the right knee

16   indicating prominent spurring with only mild join space narrowing and small joint effusion)).

17   Additionally, as discussed in greater detail in the next section, the ALJ properly determined

18   that plaintiff's subjective pain complaints are not credible.  *See infra*, section B; *Tonapetyan*,

19   242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints

20   where record supports ALJ in discounting claimant's credibility); *Morgan v. Comm'r of the*

21   *Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large

22   extent on claimant's own accounts of her symptoms and limitations may be disregarded where

23   those complaints have been properly discounted).  These are specific and legitimate reasons

24

1   supported by substantial evidence.  As such, the ALJ's reliance on these reasons to reject Dr.

2   Oswald's opinions was appropriate.  *See Batson,* 359 F.3d at 1195.

3          The next reason offered by the ALJ, that Dr. Oswald's opinions are not supported by

4   the evidence including plaintiff's reports that her condition improved, plaintiff's daily

5   activities, and, as discussed previously, plaintiff's relatively mild x-ray imaging findings, is

6   also a specific and legitimate reason sufficient to reject the opinion of a treating physician.  An

7   ALJ need not accept the opinion of even a treating physician if that opinion is inadequately

8   supported "by the record as a whole."  *Batson*, 359 F.3d at 1195;  *see also Morgan v. Comm'r*

9   *of Social Sec. Admin*., 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's

10  conclusion that claimant suffered from marked limitations in part on basis that other evidence

11  of claimant's ability to function, including reported activities of daily living, contradicted that

12  conclusion); *Magallanes*, 881 F.2d at 754 (finding ALJ properly rejected one physician's

13  opinion in part on basis that it conflicted with both other medical evidence in record and

14  plaintiff's own symptom complaints).  Here, the ALJ offers several examples of how the

15  evidence as a whole contradicts Dr. Oswald's opinions regarding plaintiff's work related

16  limitations.

17         For example, the ALJ observed that Dr. Oswald's opinion was not supported by

18  plaintiff's reports that her condition improved with therapy.  AR at 29 (referencing AR at 26).

19  Plaintiff commented on multiple occasions that her pain and muscle strength improved with

20  physical therapy.  AR at 26 (citing AR at 440 (plaintiff "reports my muscle strength fluctuates

21  but overall is definitely getting better", plaintiff "demonstrates improvement in functional

22  activities"), 466 (reporting that muscle strength is gradually getting better and demonstrating

23  improvement in muscle strength), 477 (reporting that flexibility is gradually getting better but

24  unable to sit for more than 30 minutes without increasing pain due to muscle spasms in

REPORT AND RECOMMENDATION - 10

cervical region)).  The ALJ also noted that plaintiff's physical therapist documented that plaintiff's reaching ability had increased, plaintiff's functional activities had improved, and that plaintiff's flexibility was gradually getting better with treatment.  AR at 26 (citing AR at 464, 469).  Similarly, plaintiff reported to Dr. Oswald that she felt a little better after engaging in her home exercise program.  AR at 26 (citing AR at 552).

The ALJ further noted that Dr. Oswald's opinion was not supported by plaintiff's relatively unlimited daily activities.  AR at 29 (referencing AR at 26-27).  For example, plaintiff continued to work after her alleged disability onset date.  AR at 26.  The record shows that in May 2010, just one month prior to her alleged disability onset date, plaintiff was working six-and-a-half to seven hours a day, five days a week.  AR at 26 (citing AR at 374). In 2011, plaintiff worked one to five days a week, up to five hours a day.  AR at 26 (citing AR at 489 ("works one day a week for a few hours"), 500 (working at Sears one day a week), 504 (working about three to five days a week, about three to five hours a day).  In 2012, plaintiff reported working three to four hours a week.  AR at 26 (citing AR at 542).  Although these part-time work activities alone do not contradict Dr. Oswald's opinion, when considered in light of plaintiff's other reported activities, the record as a whole indicates that plaintiff was capable of a high level of daily functioning.

For example, in addition to working part-time during the relevant period, plaintiff also reported caring for her grandchildren, taking care of household chores, and regularly engaging in a variety of social and recreational activities.  Plaintiff babysat a toddler up to three days a week.  AR at 27 (citing AR at 552, 558); *see also* AR at 43 (babysitting two year-old grandchild three days a week for about three and a half hours a day), 209.  Plaintiff additionally reported being able to perform range of household chores including preparing meals, doing light cleaning, and shopping several days a week.  AR at 27 (citing AR at 216-

23); *see also* AR at 211.  Plaintiff also reported engaging in a variety of hobbies and social

activities including watching sporting events, walking, playing video games, doing activities

with her grandchildren, attending church, and socializing family and friends regularly.  AR at

29 (citing AR at 220 ("I'm going some where every day be it to the store, my sisters or my kids

place").

      Taken as a whole, plaintiff's reported activities reasonably indicate a higher level of

overall functioning than opined by Dr. Oswald.  As such, the ALJ's rejection of Dr. Oswald's

opinion is supported by substantial evidence in the record.  *See Richardson v. Perales*, 402

U.S. 389, 401 (1971).  Although plaintiff argues for a more favorable interpretation of this

evidence, the ALJ's finding that plaintiff's reported improvement with treatment, relatively

mild findings on knee x-ray, and ability to perform a relatively unlimited range of daily

activities, including working, caring for her grandchildren, maintaining a household, and

engaging regularly in social activities, contradicts Dr. Oswald's opinion that plaintiff could

work no more than part-time is reasonable.  When the evidence is susceptible to more than one

rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Thomas*, 278

F.3d at 954.

      Lastly, the ALJ rejected Dr. Oswald's opinion because it is inconsistent with the

opinion of examining physician James K, Symonds, M.D., that plaintiff was capable of

performing a range of light work activities on a full-time basis, *See* AR at 488-92, and

inconsistent with Dr. Oswald's own statement that plaintiff "needs to work."  AR at 29 (citing

AR at  544 (Dr. Oswald noting: "I will complete disability paperwork, but I did tell her plainly

that [I] think she needs to work and that being 'disabled' is not to her benefit… I think she

would do well working perhaps part[-]time with a mainly sedentary job as long as she is

exercising at other times.")).  As discussed previously, an ALJ may properly reject the opinion

REPORT AND RECOMMENDATION - 12

of a treating physician that is unsupported by objective evidence, contradicted by other statements and assessments of a claimant's condition, and based on a claimant's subjective symptoms complaints. *See Batson,* 359 F.3d at 1195. Additionally, discrepancies between a medical source's functional assessment and that source's clinical notes, recorded observations and other comments regarding a claimants capabilities "is a clear and convincing reason for not relying" on the assessment. *See Bayliss*, 427 F.3d at 1216; *see also Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989).

In discussing Dr. Oswald's opinion that plaintiff "needs to work", the ALJ also observed that Dr. Oswald contemporaneously commented that plaintiff "has very poor motivation which has been a longstanding issue but does seem worse now that depression is somewhat worse." AR at 26 (citing AR at 544). In light of this observation, the ALJ determined that Dr. Oswald's clinical notes regarding plaintiff's lack of motivation and need to work are inconsistent with Dr. Oswald's functional assessment that indicates plaintiff would need to miss work more than four days per month. AR at 29. Although plaintiff argues for a more favorable interpretation of this evidence, "[i]f the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). For these reasons, the ALJ's rejection of Dr. Oswald's opinion was free of legal error and supported by substantial evidence and should be affirmed. *See Bayliss,* 427 F.3d at 1216 (9th Cir. 2005).

B.    Plaintiff's Credibility

Plaintiff also argues that the ALJ erred by failing to provide clear and convincing reasons supported by substantial evidence to reject her symptom testimony. Dkt. 12 at 3-10.

REPORT AND RECOMMENDATION - 13

1    The ALJ rejected plaintiff's symptom testimony because plaintiff's subjective complaints are

2    not consistent with the medical evidence that documents: non-invasive treatment; lack of

3    motivation in treatment; and improvement in symptoms and functional ability with treatment

4    and because plaintiff's daily activities, including working part-time while caring for her

5    grandchildren, maintaining a household, and engaging in a range of social activities.  AR at 26-

6    27.  These are clear and convincing reasons supported by substantial evidence sufficient to

7    reject plaintiff's testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Although

8    plaintiff is correct in arguing that an ALJ may not reject a claimant's testimony solely because

9    the degree of plaintiff's complaints are not supported by objective medical evidence, like the x-

10   ray findings discussed above, this Court finds that the ALJ offered other valid basis to reject

11   plaintiff's testimony.  *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (finding that

12   while the holding in *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.1991) (en banc), was

13   couched in terms of subjective complaints of pain, its reasoning extended to claimant's non-

14   pain complaints as well).

15        As noted above, credibility determinations are within the province of the ALJ's

16   responsibilities, and will not be disturbed, unless they are not supported by substantial

17   evidence.  A determination of whether to accept a claimant's subjective symptom testimony

18   requires a two-step analysis.  20 C.F.R. § 404.1529; *Smolen*, 80 F.3d at 1281; SSR 96-7p.

19   First, the ALJ must determine whether there is a medically determinable impairment that

20   reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. § 404.1529(b);

21   *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an

22   underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity

23   of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell,* 947

24   F.2d at 343; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative

REPORT AND RECOMMENDATION - 14

1    evidence showing that the claimant is malingering, the ALJ must provide "clear and

2    convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*,

3    157 F.3d at 722.

4            When evaluating a claimant's credibility, the ALJ must specifically identify what

5    testimony is not credible and what evidence undermines the claimant's complaints; general

6    findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

7    consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

8    inconsistencies in testimony or between testimony and conduct, daily activities, work record,

9    and testimony from physicians and third parties concerning the nature, severity, and effect of

10   the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec.

11   Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

12           As a threshold matter, to the extent that the Commissioner contends that the applicable

13   standard of review does not require the ALJ to provide "clear and convincing" reasons for

14   rejecting a claimant's testimony, this argument is foreclosed.  Dkt. 16 at 4-6.  The Ninth

15   Circuit requires this Court in reviewing an ALJ's treatment of a claimant's testimony to apply

16   the following standard: "If there is no evidence of malingering, the ALJ may reject the

17   claimant's testimony about the severity of the symptoms only by making specific findings

18   stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1283–84; *see also

19   Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *Dodrill v. Shalala*, 12 F.3d 915, 918

20   (9th Cir. 1993).  The Ninth Circuit recently denied the Commissioner's attempts to undermine

21   the clear and convincing standard, stating the suggestion "lacks any support in precedent and

22   must be rejected." *See Garrison v. Colvin*, 759 F.3d 995, 1015 n. 18 (9th Cir. 2014).  This

23   Court is bound by the law of the Ninth Circuit.  Accordingly, because the ALJ did not find

24

1    malingering, the Court finds that in discounting plaintiff's testimony, the ALJ was required to

2    provide clear and convincing reasons that are supported by substantial evidence.

3            Turning to the substance of the ALJ decision, the ALJ rejected plaintiff's testimony in

4    part because plaintiff's subjective complaints are not reasonably consistent with the medical

5    evidence that documented improvement with conservative treatment measures.  *See Meanal v.*

6    *Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to

7    prescribe, and claimant's failure to request serious medical treatment for supposedly

8    excruciating pain); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly

9    found prescription of physician for conservative treatment only to be suggestive of lower level

10   of pain and functional limitation).  For example, the ALJ noted that plaintiff's treatment

11   recommendations were non-invasive in nature and included recommendations for physical

12   therapy, message, and wearing supportive shoes.  AR at 26 (citing AR at 372, 374-75, 433-34,

13   437).  The record also supports that Dr. Oswald thought plaintiff would benefit from working.

14   AR at 26 (citing AR at  544 (Dr. Oswald noting: "I did tell her plainly that [I] think she needs

15   to work and that being 'disabled' is not to her benefit")).

16           In discussing this evidence, the ALJ further noted plaintiff's poor motivation to follow

17   through with even conservative treatment measures that might have improved her condition.

18   AR at 26 (citing AR at 544 (treating source indicating plaintiff "has very poor motivation

19   which has been a longstanding issue but does seem worse now that depression is somewhat

20   worse")); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert a good reason

21   for not seeking, or following a prescribed course of, treatment, "can cast doubt on the sincerity

22   of the claimant's pain testimony").  For example, plaintiff declined trigger point injection.  AR

23   at 26 (citing AR at 434).  Plaintiff also admitted to continuing to eat an unhealthy diet despite

24   nutritional counseling for diabetes management.  AR at 26 (citing AR at 545("patient has a

REPORT AND RECOMMENDATION - 16

1   very poor diet, often eating a full bag of potato chips on a daily basis")).   Nonetheless, as

2   discussed in greater detail previously, the record indicates plaintiff's symptoms and functional

3   ability improved with these non-invasive treatment measures.   AR at 26 (citing AR at 440, 464,

4   466, 469, 477); *see supra*, section A.   An ALJ may discount a claimant's credibility on the

5   basis of medical improvement.   *See Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d

6   595, 599 (9th Cir. 1999) (doctor's report indicating improvement with medication contradicted

7   claimant's testimony regarding lack of improvement).

8       The ALJ also rejected plaintiff's testimony because plaintiff's daily activities were

9   inconsistent with her allegations of disabling impairments.   AR at 26-27.   The Ninth Circuit

10  has recognized "two grounds for using daily activities to form the basis of an adverse

11  credibility determination," first, they can "meet the threshold for transferable work skills," and

12  second, they can "contradict [her] other testimony."   *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

13  2007).   Here, the ALJ relies on the later basis.   As discussed previously in greater detail, in

14  addition to working part-time during the relevant period, plaintiff reported caring for her

15  grandchildren, taking care of household chores, and regularly engaging in a variety of social

16  and recreational activities.   *See supra*, section A (citing AR at 26-27, 209, 211, 216-23, 489,

17  500, 504, 542, 552, 558).   The ALJ's conclusion that plaintiff's overall level of activity

18  contradicts her testimony regarding her disabling limitations is reasonable.   *See Allen v.

19  Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to

20  support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v.

21  Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).   As such, this Court finds no reason to disturb the

22  ALJ's credibility assessment.

23       C.      The ALJ's Findings at Step Four

24

REPORT AND RECOMMENDATION - 17

Plaintiff also raises issue with the ALJ's decision at step four of the sequential evaluation process. Dkt. 12 at 18-22. Specifically, plaintiff argues that the ALJ erred by finding plaintiff could return to her past relevant work as a senior document scanner at US Archive Imaging Service because this work required lifting up to 30 pounds, which is in excess of the RFC determination. *Compare* AR 25 (finding plaintiff can frequently lift/carry ten pounds and occasionally lift/carry 20 pounds) *with* AR 228 (indicating plaintiff's work at UW Archive Imaging Service required lifting up to 30 pounds). Plaintiff further argues that the testimony of a vocational expert is necessary in this case to properly define and categorize her past relevant work and to provide testimony regarding the impact of her neck limitations on this work. *See* AR at 529 (Dr. Oswald opining plaintiff could occasionally look down and occasionally turn her head right or left). In contrast, defendant argues these errors are harmless because the ALJ also found plaintiff could return to the document manager job she performed at T-scan, which does not require physical or mental abilities in excess of the RFC, and because the ALJ properly rejected Dr. Oswald's opinion regarding plaintiff's neck limitations. Dkt. 16 at 13-14. This Court agrees with defendant.

At step four, the claimant bears the burden of proving that she can no longer perform her past relevant work. 20 C.F.R. §§ 404.1512(a), 404.1520(f); *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). Although the burden of proof lies with the claimant at step four, the ALJ retains a duty to make factual findings to support his conclusion. *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001) (citing Social Security Ruling ("SSR") 82-61). The claimant must be able to perform:

1.    The actual functional demands and job duties of a particular past relevant job; or

2.    The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

REPORT AND RECOMMENDATION - 18

SSR 82-61.  "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work."  *Id*. at 845 (citing SSR 82-62).  A claimant may be found not disabled at step four based on a determination that she can perform past relevant work as it was actually performed *or* as it is generally performed in the national economy.  SSR 82-61; SSR 96-8p.

Here, the ALJ determined that plaintiff could return to her past relevant work as actually performed at US Archive Imaging Service and T-scan.  AR at 30.  As defendant points out, any error made by the ALJ with regard to the compatibility of the RFC finding with the requirements of plaintiff's past work at US Archive Imaging Service is made harmless by the ALJ's additional finding that plaintiff could return to the work she performed at T-scan, which does not require physical or mental abilities in excess of the RFC finding.  *Compare* AR at 25 (finding plaintiff can frequently lift/carry ten pounds, occasionally lift/carry 20 pounds, stand and/or walk four hours in an eight-hour day, and sit six hours in an eight-hour day) *with* AR at 227 (indicating plaintiff's past work at T-scan required the ability to lift a maximum of 20 pounds, lift less than ten pounds frequently, occasionally stand up to three hours in an eight-hour day, and sit up to six hours in an eight-hour day).  Furthermore, this Court already determined that the ALJ properly rejected the medical opinion of Dr. Oswald.  *See supra*, section A.  For this reason, the ALJ did not err by not including neck related limitations in the RFC or by not obtaining testimony from a vocational expert regarding the impact of said neck limitations.  *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not required to incorporate properly discounted medical opinion evidence into RFC determination).  For these reasons, the ALJ's finding that plaintiff was not disabled at step four of the sequential disability evaluation process should be affirmed.

1

### VIII.   CONCLUSION

2          For the foregoing reasons, the Court recommends that this case be AFFIRMED

3   pursuant to sentence four of 42 U.S.C. § 405(g).  A proposed order accompanies this Report

4   and Recommendation.

5          Objections to this Report and Recommendation, if any, should be filed with the Clerk

6   and served upon all parties to this suit by no later than **January 20, 2015**.  Failure to file

7   objections within the specified time may affect your right to appeal.  Objections should be

8   noted for consideration on the District Judge's motion calendar for the third Friday after they

9   are filed.  Responses to objections may be filed within **fourteen (14)** days after service of

10  objections.  If no timely objections are filed, the matter will be ready for consideration by the

11  District Judge on **January 23, 2015**.

12         This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

13  seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

14  assigned District Judge acts on this Report and Recommendation.

15         DATED this 5th day of January, 2015.

16

17         _James P. Donohue_
           _____
18         JAMES P. DONOHUE
           United States Magistrate Judge

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 20